**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **PRINCESS MYERS** | * | **CIVIL ACTION** |
| **V.** | * | **NO. 24-1988 "B" (1)** |
| | * | **JUDGE IVAN L.R. LEMELLE** |
| **THE UNITED STATES POSTAL SERVICE, LOUIS DEJOY, POSTMASTER GENERAL** | * | **MAG JANIS VAN MEERVELD** |

\* \* \* \* \*

**MEMORANDUM IN SUPPORT OF**
**FEDERAL DEFENDANT'S MOTION TO DISMISS**
**AND/OR ALTERNATIVELY FOR SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

INTRODUCTION AND OVERVIEW

Plaintiff herein, Princess Myers (hereinafter "Myers" or "Plaintiff") has instituted the above-captioned lawsuit growing out of the sole complaint of employment discrimination she processed prior to resigning from the U.S. Postal Service. Said administrative complaint (and, likewise, this lawsuit) attempts to bootstrap a series of separate incidents of alleged sexual harassment which preceded Myers' July 13, 2023 contact with an EEO counselor by far more than 45 days, to an incident of alleged retaliation occurring immediately before she initiated the EEO remedy that self-same day (July 13, 2023). Myers lawsuit also attempts to stretch the bootstraps of this sole administrative EEO complaint around a subsequent claim of alleged constructive discharge, for which she made no attempt to amend her EEO complaint or file a new one.

Thus, as demonstrated infra, the Postmaster General should be granted summary judgment on (1) Plaintiff's sex-based hostile work environment claims for untimely exhaustion, (2) her

˘ 1 ˘

constructive discharge claim for failure to exhaust the administrative EEO remedy, and (3) her claim of retaliatory suspension for failure to make out a *prima facie* case as well as lack of evidence showing management's rationale for the adverse personnel action is pretextual.

## FACTUAL AND PROCEDURAL BACKGROUND

As borne out by the attached materials and set forth in the list of uncontested material facts, Myers was employed by the Postal Service as a Mailhandler in its Processing and Distribution Center (P&DC) in New Orleans (read "701 Loyola"). She obtained certification to operate several different pieces of "PIT"[1] equipment used to pull and carry pallets and post-cons containing large loads of mail at a time. These included jitneys, forklifts and tow motors (also called "Slays" [sic] or "Sleds" by the employees). Being a still relatively new craft employee,[2] Myers worked on Tour 1—the night shift—which ran from 10:00pm to 7:00am.

The event giving rise to the sole EEO complaint that Plaintiff processed prior to leaving the employ of the USPS occurred on the night/early morning of July 13, 2023. Myers reported over 2 hours late for that shift, and by the time she arrived, all of the PIT equipment had been assigned to other workers, including Ty'ren McKenzie, a non-permanent employee. Asserting her seniority, Myers took over McKenzie's "slay" and proceeded to tow and dispatch mail. Some while later, Michael Phillips, the Senior Manager, Distribution Operations (MDO) at the P&DC, observed that McKenzie was no longer operating the sled, and ordered Sharon Walker, Myers' direct Supervisor, to switch McKenzie back onto the slay Myers was operating. With no other equipment available, a frustrated Myers sought out her union steward, Sybil Montrel to complain,

---

1 **P**owered **I**ndustrial **T**rucks.
2 Myers began working for the Postal Service in March 2021.

˘ 2 ˘

but was interrupted by Phillips who told Plaintiff to locate an unoccupied slay or forklift or get off the clock and out of the P&DC.

An imbroglio ensued about which the accounts differ. Myers recounts telling Phillips merely to "get out of her face" while Phillips claimed he heard Plaintiff threaten him in addition to calling him a couple of uncomplimentary names. The argument continued as Phillips walked away and Myers followed, prompting the Senior MDO to summon the Postal Police to come and escort Myers out of the building. Walker prevailed upon Plaintiff to leave the P&DC voluntarily which she did sans escort, but not before Myers promised Phillips that she "was going to file an EEO on him for all of his harassment/sexual harassment." Undisputed fact # 18.

Myers immediately fulfilled her promise, contacting an EEO counselor later in the day on July 13, 2023,[3] to complain about:

> discimnation [sic] based on Sex (female) when 1) November 2022, management approached her and called her a "tall glass of water and gave her a very tight hug; 2) December 2022, management approached her and told her she had beautiful eyes and she should have his baby; 3) July 13, 2023 management sent her home and did not pay her and sexually harassed her when he made attempts to take her out on dates.

See Exhibit A to Declaration of Alan L. Powell. By the time she lodged her formal EEO complaint on October 16, 2023, Myers had added three more sexual harassment allegations, all with "unspecified" dates. In all, the Postal Service accepted 8 claims for investigation: 1) On an unspecified date, you alleged Manager Phillips blew a kiss at you in front of coworkers; 2) On an unspecified date, you alleged Manager Phillips asked you out on a date; 3) On an unspecified date, you alleged Manager Phillips attempted to hug you; 4) In November 2022, you alleged Manager

---

3 Myers also made the suspension/emergency placement the subject of a collective bargaining grievance as well as a complaint to the OIG. Myers Affidavit at p. 31.

Phillips called you a "tall glass of water" and gave you a tight hug; 5) In December 2022, you alleged Manager Phillips asked you to have his baby; 6) On July 13, 2023, you alleged you were required to give your tow motor equipment to another employee with less seniority; 7) On July 13, 2023, you alleged management made inappropriate comments; and 8) On July 13, 2023, you alleged you were sent home and not paid for the day. The discriminatory bases alleged were "sexual harassment based on Sex (Female), Retaliation (Reporting Sexual Harassment) and Disability (Mental/Anxiety)." *See* Exhibit C to Powell Declaration.

Myers was advised that if she disagreed with the issues/bases set forth in the acceptance letter she had to respond in writing within 7 days. Plaintiff did not object to the letter of acceptance and the investigation ensued and was completed on March 26, 2024. Myers, through her current counsel, requested a Final Agency Decision which was issued on May 24, 2024. Despite being advised that Phillips was no longer working at the P&DC, Myers resigned on May 10, 2024. Since resigning, Myers has not filed any another EEO complaint, much less one alleging she was constructively discharged.

SUMMARY OF THE ARGUMENT

The Postmaster General seeks dismissal and/or summary judgment of Plaintiff's EEO claims sounding in sexual harassment/hostile work environment for not being timely exhausted, and of her constructive discharge claim for not being exhausted at all. Additionally, Federal Defendant seeks judgment as a matter of law on Plaintiff's claim of retaliation regarding her suspension/emergency placement. Myers can neither make out a *prima facie* case of retaliation because (a) she had not engaged in protected EEO activity prior to July 13, 2023 and (b) Phillips was unaware of any such activity at the time he implemented the adverse personnel action, nor can

˘ 4 ˘

she produce any evidence demonstrating that Phillips' reason for "putting her out of the building" on July 13, 2023 is pretextual. Given that Plaintiff is unable to establish the existence of essential elements of her case on which she bears the burden of proof at trial, the Postmaster General is entitled to summary judgment as a matter of law.

## APPLICABLE LAW

### A.  Legal Standard for a Rule 12(b)(6) Motion

Defendant's motion to dismiss for failure to exhaust administrative remedies can be considered under Rule 12(b)(6) for failure to state a claim. Courts have routinely held that a plaintiff's complaint is subject to dismissal under Rule 12(b)(6) when the plaintiff "fails to allege exhaustion of administrative remedies."[4]

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[5] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[6] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[7] The Court need not, however, accept as true any legal conclusions couched as factual allegations.[8] To be legally sufficient, a complaint

---

4 *Hoffman v. Boeing*, 596 F.2d 683, 685 (5th Cir. 1979); *see Johnson v. U.S. Postal Serv.*, 2016 WL 791076, at *1-2 (N.D. Tex. Jan. 27, 2016) (finding that plaintiff's Title VII claim should be dismissed for failure to state a claim rather than for lack of jurisdiction where the plaintiff failed to allege exhaustion of administrative remedies). *But see Pacheco v. Mineta*, 448 F.3d 783, 788 n. 7 (5th Cir. 2006) discussing the disagreement in the Fifth Circuit on whether a Title VII prerequisite, such as exhaustion, is merely a prerequisite to suit, and thus subject to waiver and estoppel, or whether it is a requirement that implicates subject matter jurisdiction. Since neither waiver or estoppel are implicated in the ensuing discussion of Myers' failure to properly exhaust her claims preceding and following the July 13, 2023 incident, the distinction is without a legal significance in this case.
5 *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 547 (2007)).
6 *Iqbal* at 678
7 *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 232 (5th Cir. 2009).
8 *Iqbal* at 678.

must establish more than a "sheer possibility" that the plaintiff's claims are true.[9] The complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.[10] If it is apparent from the face of the complaint that an insurmountable bar to relief exists, and the plaintiff is not entitled to relief, the court must dismiss the claim.[11]

    B.    **Legal Standard for a Rule 56(b) Motion**

For disposition on summary judgment, Rule 56(a) of the Federal Rules of Civil Procedure provides in pertinent part as follows, "[t]he court shall grant summary judgment if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (en banc). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine dispute of material fact requiring a trial. *Id.* The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine dispute worthy of trial. *Anderson v. Liberty Lobby,*

---

[9] *Id.*
[10] *Lormand,* 565 F.3d at 255–57.
[11] *Jones v. Bock,* 549 U.S. 199, 215 (2007).

*Inc.*, 477 U.S. 242, 248–49 (1986); *Little*, 37 F.3d at 1075. The non-moving party does not demonstrate the existence of a genuine dispute of fact by asserting "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or only by a scintilla of evidence." *Little*, 37 F.3d at 1075; *Douglass v. United States*, 79 F.3d 1415, 1429 (5th Cir. 1996). Further, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 n.7 (5th Cir. 1992).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. No genuine dispute of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. *National Ass'n of Gov't Emps. v. City Pub. Serv. Bd.*, 40 F.3d 698, 712 (5th Cir. 1994).

"Summary judgment need not be an all or nothing proposition because Rule 56 permits courts to grant partial summary judgment resolving certain issues or claims while leaving others open for trial[.]" *McGuire v. Sigma Coatings, Inc.*, No. 91-2076, 1993 WL 329982, at *3 (E.D. La. Aug. 19, 1993). Similarly, Fed. R. Civ. P. 56(g) states that the Court "may enter any order stating any . . . item of damages or other relief . . . is not genuinely in dispute." *See also* 11 James Wm. Moore, Moore's Federal Practice § 56.122[2] (3d ed.) ("[S]ummary judgment may be requested . . . as to parts of claims or defenses."). Motions for partial summary judgment "resolv[ing] a single legal issue" result in "sorts of 'gatekeeping' or 'case pruning' decisions." *Id*. at § 56.08[2].

ARGUMENT

**A.     Myers' Sexual Harassment/Hostile Work Environment Claims Were Untimely Exhausted**

Section 717 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16(c), permits most federal employees to seek relief from proscribed discriminatory employment practices in Federal District Court. As a precondition to seeking this judicial relief, however, complaining employees must exhaust their administrative remedies by filing a charge of discrimination with the EEO division of their agency. *Pacheco v. Mineta, supra* at 787-88 *citing Brown v. General Servs. Admin.,* 425 U.S. 820, 96 S.Ct. 1961, 1967–68, 48 L.Ed.2d 402 (1976); *Martinez v. Dep't. of U.S. Army,* 317 F.3d 511 (5th Cir.2003); 29 C.F.R. § 1614.105–107 (2005); *Fitzgerald v. Sec., U.S. Dep't of Veterans Affairs*, 121 F.3d 203, 206 (5th Cir. 1997). If a federal employee fails to exhaust his administrative remedies, the district court cannot adjudicate the employee's Title VII claim. *Fitzgerald* at 206 (citing *Porter v. Adams*, 639 F.2d 273, 276 (5th Cir. 1981)); *see also National Ass'n*, 40 F.3d at 711.

The EEOC has promulgated procedural regulations with time limitations designed to resolve federal employees' claims of discrimination at the administrative level. *Fitzgerald* at 206; *Piper v. Veneman*, 2004 WL 1920956, at *3 (E.D. La. Aug. 26, 2004). A failure to comply with the established time limits in the administrative process is deemed a failure to exhaust administrative remedies. *Aldridge v. Summers*, 213 F.3d 636, at *1 (5th Cir. 2000) (citing *Brown*, 424 U.S. at 824). The time regulation most pertinent to this case is that a claimant must consult with a counselor at the employing agency's EEO office within 45 days of the alleged discriminatory or retaliatory act. 29 C.F.R. § 1614.105(a)(1). "Failure to notify the EEO counselor within this [45-day] time period constitutes a failure to exhaust administrative remedies and acts

˘ 8 ˘

as a bar to judicial pursuit of those claims." *Swanson v. Perry*, 69 F. App'x 658 (5th Cir. 2003) (citing *Pacheco v. Rice*, 966 F.2d 904, 905 (5th Cir. 1992)); *Baker v. McHugh*, 672 F. App'x 357, 361 (5th Cir. 2016); *Craig v. Merit Sys. Prot. Bd.*, No. 17-6242, 2017 WL 6055158, at *2 (E.D. La. Dec. 7, 2017) ("Failure to meet regulatory deadlines during administrative review means that a plaintiff's complaint may be dismissed for lack of administrative exhaustion."); *Crippi v. Dep't of Army*, No. 95-2333, 1997 WL 124143, at *3 (E.D. La. Mar. 18, 1997) ("Failure to initiate the EEO administrative procedures within the prescribed time period will result in dismissal with prejudice of a subsequently filed suit.") (Vance, J.). In sum, "[f]ailure to notify the EEO counselor in a timely fashion may bar a claim, absent a defense of waiver, estoppel, or equitable tolling." *Pacheco v. Rice*, 966 F.2d 904, 905 (5th Cir. 1992) (citing *Henderson v. U.S. Veterans Admin.*, 790 F.2d 436, 439–40 (5th Cir. 1986)).

In the case at bar, there is no genuine dispute of fact that Myers' sole effort to exhaust the administrative EEO remedy began on July 13, 2023, when she contacted DRS Hales following the workroom floor quarrel Plaintiff had with Senior MDO Phillips that resulted in her being put out of the building and on emergency placement, an act that Phillips alleges was the result of retaliation for her statements,[12] not sexual harassment. *See* Myers Affidavit, p. 29. Indeed, Myers acknowledged that she finally "was *going to file* an EEO on him for *all* of his harassment/sexual harassment." Myers Affidavit at p. 21, Question # 158 (emphasis added).

Even assuming, arguendo, that Myers' was alleging the July 13, 2023 incident was another instance of sexual harassment, the fact remains that the other such allegations all occurred well

---

12 Myers avers that on the advice of her union steward on Tour 1, Tyra Causey, she submitted several statements to Human Resources recounting Phillips' statements and actions towards her. But July 13, 2023 was the only occasion on which she initiated the EEO remedy. *See* Exhibit B, Formal Complaint, at p. 1, Box 16.

outside the 45 day limitations period. Indeed, those incidents for which Myers supplied a date,[13] occurred in November and December of 2022, well before July 13, 2023, and thus untimely exhausted.

To avoid dismissal, Myers must show that these otherwise untimely acts were part of a continuing violation. She cannot do so. The continuing violation doctrine provides that when a plaintiff alleges hostile work environment, "as long as an employee files her complaint while at least one act which comprises the hostile work environment claim is timely, 'the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 737 (5th Cir. 2017) (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 177 (2002)). However, "[t]o apply the continuing violation doctrine, a plaintiff must demonstrate that the separate acts are related." *Cavanaugh v. Wormuth*, No. 2024 WL 894791 (E.D. La. Mar. 1, 2024) (citing *Williams v. E.I. du Pont de Nemours & Co.*, 154 F. Supp. 3d 407, 417 (M.D. La. 2015) (citing *Pacheco*, 966 F.2d at 788–89)). "[T]he continuing violation theory requires the same type of discriminatory acts to occur both inside and outside the limitations period, such that a valid connection exists between them." *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351–52 (5th Cir. 2001).

Here, Myers' claims that fall outside the limitations period are not related to her timely claims. Myers brings only three claims that fall within the 45-day limitations period. The claims are:

- "6) On July 13, 2023, you alleged you were required to give your tow motor

---

13  It would appear that Claim ## 3 and 4 of the accepted issues were one and the same incident that took place in November, 2022. *See* Myers Affidavit, at p. 13, Question # 95.

> equipment to another employee with less seniority.
>
> - 7) On July 13, 2023, you alleged management made inappropriate comments.[14]
>
> - 8) On July 13, 2023, you alleged you were sent home and not paid for the day."

See Acceptance Letter, Exhibit C to Powell Declaration.

These claims are not related to the earlier, time-barred allegations. The actions alleged are not sexual in nature, do not reflect ongoing sexual harassment, and bear no similarity to the alleged sexual comments made in the past. As such, they are not part of the same hostile environment and cannot revive the earlier time-barred claims.

Moreover, since Myers asserts that the July 13, 2023 claims involve retaliation for complaining of the earlier alleged harassment, she is precluded from asking this Court to apply the continuing violation doctrine. "[R]etaliation is, by definition, a discrete act, not a pattern of behavior." *Hamic v. Harris Cnty W.C. & I.D. No. 36*, 184 F. App'x 442, 447 (5th Cir. 2006). Thus, "post-*Morgan* . . . the continuing violations doctrine does not apply to retaliation." *Id*. *See also Saunders v. McDonough*, No. CV 19-11482, 2021 WL 1401762, at *4 (E.D. La. Apr. 14, 2021).

Thus, all of Myers' sexual harassment claims preceding July 13, 2023, are untimely and should be dismissed.

**B.    Myers' Failed to Administratively Exhaust her Constructive Discharge Claim**

As stated earlier, "[e]mployment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. Exhaustion occurs when the plaintiff files a

---

14 The alleged inappropriate comments for this claim are not sexual in nature. They involve Mr. Phillips allegedly telling Ms. Myers that she would be working at Burger King after being removed from the building. (ROI at 00110).

timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). "While a court should construe an EEO claim broadly and look 'slightly beyond its four corners, to its substance rather than its label,' a claim has only been exhausted if it 'could reasonably be expected to grow out of the charge of discrimination' such that the Agency would be on notice of and be able to investigate the claim." *Frank v. United States Dep't of Agric.*, No. 2018 WL 4052197, at *5 (E.D. La. Aug. 24, 2018) (*quoting Pacheco v. Mineta*, 448 F.3d 783 (5th Cir. 2006)). "The proper question is whether the charge has stated sufficient facts to trigger an EEOC investigation and to put an employer on notice of the nature of the charges against him." *Simmons-Myers v. Caesars Ent. Corp.*, 515 F.App'x 269, 272–73 (5th Cir. 2013).

With regards to constructive discharge claims, "in the Fifth Circuit, 'the magic words 'constructive discharge' do not need to appear in an EEO complaint for a finding of administrative exhaustion. *Thabatah v. Collins*, CA 23-1043, 2025 WL 816290 (E.D. La. Mar. 14, 2025) (quoting *Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500, 508 (5th Cir. 2024)). Nevertheless, "a Title VII lawsuit can only include those allegations that are 'like or related to [those] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission." *Davenport v. Edward D. Jones & Co., L.P.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting *Sanchez v. Standard Brands*, 431 F.2d 455, 466 (5th Cir. 1970).

Myers' EEO complaint filed in July of 2023, could not have put the Postal Service on notice of a constructive discharge claim arising in May of 2024. The case most on point here is *Stone v. Louisiana Dept. of Revenue*, 590 F'Appx. 332 (5th Cir. 2014). Stone filed a complaint with the EEOC in 2010, alleging racial discrimination and retaliation. *Id*. at 334. At the time

she filed the complaint, Stone was still employed with defendant. *Id*. Two years later, in 2012, Stone resigned. *Id*. Later that year, Stone filed suit in the Eastern District of Louisiana, alleging constructive discharge. *Id*. The Fifth Circuit affirmed the lower courts' ruling that her claim of constructive discharge was not exhausted. *Id*.

The court reasoned, "Stone did not allege any facts in her 2010 EEOC charges that reasonably encompass her later claims for constructive discharge . . . At the time she filed her 2010 EEOC charge she was still employed with the Department . . . Thus, Stone's subsequent claims fall outside 'the scope of the EEOC investigation' and could not reasonably be expected to grow out of her initial charge of race discrimination and harassment." *Id*. at 338 (internal citations omitted).

Other Fifth Circuit cases support the proposition that an EEO claim must reference the alleged discharge in order to administratively exhaust the claim. In *Davenport v. Edward D. Jones & Co., L.P.*, *supra*, the Fifth Circuit affirmed the district court's dismissal of Davenport's constructive discharge claim. Davenport alleged she was sexually harassed by her immediate supervisor when, among other incidents, he allegedly discussed a nude picture of her in front of a customer. *Id*. at 168. In November of 2015, Davenport filed an EEO complaint, referencing the incident with the customer. *Id*. at 166. Davenport then took a continuous leave of absence and later resigned after being informed she could not transfer, and she needed to return to work in order for Edward Jones to complete its investigation. *Id*. Davenport later received her right to sue and brought action against Edward Jones claiming constructive discharge. *Id*.

The Fifth Circuit upheld the district court's finding that her claim for constructive discharge was not exhausted. *Id*. at 168. Reviewing her EEO complaint, the court observed, "[Davenport]

did not allege that she left her employment or her reasons for leaving. Davenport merely alleged that Coyne inappropriately discussed a nude picture in front of a customer, and that, as a result, she took a leave of absence." *Id*.

The decision in *Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500 (5th Cir. 2024), is also instructive. In *Ayorinde*, the Fifth Circuit upheld the district court's dismissal of Ayorinde's constructive discharge claim on defective exhaustion grounds. *Id*. at 509. Ayroinde filed an EEO complaint, and later amended same, alleging racial discrimination and hostile work environment. *Id*. at 505. The crux of his claim was that his supervisor cut his pay and refused to schedule him for any work after his return from a trip to Africa. *Id*. Ayorinde's subsequent lawsuit alleged constructive discharge, which the district court dismissed for failure to exhaust administrative remedies, and the Fifth Circuit affirmed. *Id*. at 509. The court reasoned, "Ayorinde made no reference at all to his resignation in either of his EEOC charges. We thus conclude that Ayorinde has failed to exhaust administrative remedies with respect to his constructive discharge claim and that summary judgment was proper." *Id*.

In the instant case, the alleged constructive discharge occurred substantially after the completion of the investigation into Myers' EEO complaint. Undisputed Fact # 6. Consequently, the EEO investigation report and Final Agency Decision do not mention her resignation, much less analyzed a constructive discharge claim. The Fifth Circuit has upheld dismissals for failure to exhaust in much closer cases than this one. In *Ayorinde* and *Davenport*, the alleged constructive discharge occurred before the filing of the EEO complaint, but the claim was still dismissed for failure to adequately reference the discharge in the EEOC proceeding. In this case, like in *Stone*, the EEO complaint was made and completely processed well before the

˘ 14 ˘

alleged constructive discharge occurred. Federal Defendant submits, that such a claim could not "fall within the scope" of the subsequent EEOC investigation and the claim is procedurally barred as a matter of law. Therefore, Plaintiff's constructive discharge claim should be dismissed.

**C. Myers' Cannot Make Out a Prima Facie Case of Retaliation, Nor Can she Demonstrate that Management's Reason for Putting her Out of the Workplace and on Emergency Placement is Pretextual**

The burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and its progeny establish the respective burdens and standards for plaintiff and defendant on motion for summary judgment for a Title VII cause of action for retaliation. *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005). Under this framework, plaintiff has the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802. An individual alleging a retaliation claim under Title VII establishes a prima facie case by showing that: 1) he engaged in a protected activity; 2) an adverse employment action occurred; and 3) a causal link existed between the protected activity and the adverse action. *Septimus*, 399 F.3d at 609.

If a prima facie case is present, a presumption of retaliation arises and the burden then shifts to the employer to produce a legitimate, non-retaliatory reason for the alleged adverse employment action. *Broadway v. U.S. Dep't of Homeland Sec.,* 2006 WL 2460752, at *3 (E.D. La. Aug. 22, 2006). "Defendant's burden is one of production, not persuasion." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Thus, "defendant must merely set forth, through admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). This causes the presumption of

retaliation to dissipate. *Smith v. Aaron's Inc.*, 325 F. Supp. 2d 716, 724 (E.D. La. 2004). In the third stage of the burden-shifting framework, the plaintiff is given a "full and fair opportunity to demonstrate" that the defendant's proffered reason is a pretext for retaliation. *Price v. Fed. Express*, 283 F.3d 715, 721 (5th Cir. 2002) (citing *Hicks*, 509 U.S. at 507-08).

A *prima facie* case of retaliation under Title VII requires a showing that the decisionmaker was aware of protected activity; otherwise, there can be no causal connection between the protected activity and any adverse employment action taken by that decisionmaker. *Watts v. Kroger Co.,* 170 F.3d 505, 512 (5th Cir.1999); *see also Corley v. Jackson Police Dep't,* 639 F.2d 1296, 1300 (5th Cir.1981) ("[A]n employer cannot be guilty of retaliation for an employee's opposition to discrimination unless he is aware of that opposition."); *Santos v. Texas Workforce Comm'n*, No. CIV A H-08-1869, 2009 WL 483132, at *3 (S.D. Tex. Feb. 24, 2009).

In the case at bar, Myers avers that two weeks before the July 13, 2023 incident, she had provided a "statement" about Phillips' conduct that went to Human Relations. Assuming, *arguendo*, that this comprises protected EEO activity, Plaintiff has no direct proof and only infers that Phillips knew about her making this statement.[15] In fact, neither Phillips nor the other supervisors in Plaintiff's management chain, were aware that Myers had engaged in any EEO activity prior to the July 13, 2023 incident. See Undisputed Facts ## 22-24. Thus, Myers cannot meet even the burden of producing facts sufficient to make out a prima facie case of retaliation. *See Smith v. Potter*, 629 F. Supp. 2d 644, 656 (S.D. Miss. 2009) (no proof that Postal supervisor was aware of Plaintiff's EEO claim against a different supervisor at the time he made the decision

---

15 Myers avers that after submitting the statement, Phillips ceased his alleged sexually harassing behavior. Myers Affidavit, p. 10, Question # 69..

˘ 16 ˘

to place plaintiff off the clock and have her escorted from the premises[16]); *Standley v. Rogers*, 202 F. Supp. 3d 655, 670 (W.D. Tex. 2016), aff'd, 680 F. App'x 326 (5th Cir. 2017) (mere speculation and "theorizing" that supervisor knew of plaintiff's EEO complaints filed while stationed in other countries is insufficient to establish causal connection).

It further follows that there is no causal connection when an adverse employment action occurs before the plaintiff engages in activity protected by Title VII. *See Nowlin v. Resolution Trust Corp.,* 33 F.3d 498, 507 (5th Cir.1994) (stating that adverse employment action must follow the protected activity); *Thomas v. Exxon U.S.A.,* 943 F.Supp. 751, 763 (S.D.Tex.1996) (granting summary judgment on retaliation claim where adverse employment action occurred before plaintiff complained of discrimination). *Santos v. Texas Workforce Comm'n*, No. CIV A H-08-1869, 2009 WL 483132, at *3 (S.D. Tex. Feb. 24, 2009). Federal Defendant submits that even Plaintiff acknowledged she had not yet engaged in protected EEO activity, i.e., started an EEO complaint when she threatened Phillips with doing same as she was being put off the clock and out of the building. Undisputed Fact # 18. Given that her EEO complaint was filed after she was put out of the building on emergency placement, the adverse action could not be the product of retaliation.

Assuming for the sake of argument that Myers has stated a prima facie case of retaliation, the Postal Service has identified a legitimate, non-retaliatory reason for the alleged retaliatory actions taken in this case. Specifically, Phillips believed he heard Myers threaten to have her boyfriend come and "f--- him up," in addition to calling him a "crack head" and a "bitch." All

---

16 *Cf.* discussion at p. 652 of *Smith, supra*, regarding whether being put off the clock and out of the building constitutes an adverse employment action.

such behaviors are proscribed by the Postal Service's zero tolerance policy. Undisputed Facts ## 20-21. Thus, Phillips' actions—putting Myers out of the building and on emergency placement—were rooted not in retaliatory animus, but, rather, in keeping with established Postal Service policy prompted by Myers own actions.[17]

Since the Federal Defendant has discharged its burden of identifying a legitimate, non-retaliatory reason for the complained-of actions, the burden is on Myers to prove pretext. Myers has no objective evidence of pretext, offering instead only conclusory allegations, speculation, and unsubstantiated assertions insufficient to defeat summary judgment. Indeed, in the Fifth Circuit, "it is more than well-settled that an employee's subjective belief about discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason." *Henry v. Cont'l Airlines*, 415 F. App'x 537, 540 (5th Cir. 2011) (cleaned up). For this reason, the Court should grant the Postmaster General summary judgment in the absence of evidence demonstrating a material dispute on pretext.

---

[17] Even Myers admits that Phillips has put "many" other workers out of the building. Myers Affidavit, p. 20, Question # 154(f).

CONCLUSION

**WHEREFORE**, based on the foregoing, the Postmaster General respectfully prays that his motion be **GRANTED**.

Respectfully submitted,

MICHAEL M. SIMPSON
ACTING UNITED STATES ATTORNEY

*/s/ Glenn Sc,hreiber*
GLENN K. SCHREIBER
Assistant United States Attorney
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3093
Telefax: (504) 680-3174
glenn.schreiber@usdoj.gov