UNITED STATES POSTAL SERVICE
EQUAL EMPLOYMENT OPPORTUNITY CASE
IN THE MATTER OF:

Princess Myers,
Complainant                                Agency Case No. 1C-731-0359-23

v.

Louis DeJoy,
Postmaster General,                        Formal Filed: October 19, 2023
c/o Eastern Processing Area
Respondent.

## FINAL AGENCY DECISION

### Introduction

Pursuant to Equal Employment Opportunity Commission (EEOC) regulations at 29 C.F.R. §1614.110(b), this is the final agency decision of the U.S. Postal Service regarding the complaint of discrimination identified above.

### Statement of Claim

The complainant alleged discriminatory harassment based on sex (Female), disability (Anxiety), and retaliation (Reporting Sexual Harassment) when:

1. On an unspecified date, Manager, Distribution Operations (MDO) Michael Phillips blew a kiss at her in front of co-workers.
2. On an unspecified date, MDO Phillips asked her out on a date.
3. On an unspecified date, MDO Phillips attempted to hug her.
4. In November of 2022, MDO Phillips called her a "tall glass of water" and hugged her tightly.[1]
5. In December of 2022, MDO Phillips asked her to have his baby.
6. On July 13, 2023, she was required to give up her tow motor to another employee with less seniority.
7. On July 13, 2023, management made inappropriate comments.
8. On July 13, 2023, she was sent home and not paid for the day.

(Report of Investigation [ROI], Claims to be Investigated).

---

[1] The complainant indicates that Claims 3 and 4 are identical. (ROI, Affidavit A, p. 13).

Exhibit F

Final Agency Decision
Princess Myers
Agency Case Number 1C-731-0359-23
Page 2

**Procedural Dismissal**

29 C.F.R. §1614.107(a)(2) states that prior to a request for a hearing in a case, the agency shall dismiss an entire complaint that fails to comply with the applicable time limits contained in 29 C.F.R. §1614.105(a)(1) which specifies that an aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action. 29 C.F.R. §1614.105(a)(2) states that the agency shall extend the 45-day time limit when the individual shows that she was not notified of the time limits and was not otherwise aware of them, that she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, that despite due diligence she was prevented by circumstances beyond her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

Furthermore, the Commission has adopted a "reasonable suspicion" standard to determine when the 45-day limitation period is triggered. *See* Davis v. Department of the Air Force, EEOC Appeal No. 01A21734 (March 18, 2003) and Bowser v. U.S. Postal Service, EEOC Appeal No. 01A05301 (June 13, 2002), *both citing* Howard v. Department of the Navy, EEO Request No. 05970852 (February 11, 1999). Moreover, the Commission has held that waiting until one obtains "proof" of discrimination similarly will not toll the time limit. *See* Hernandez v. U.S. Postal Service, EEOC Appeal No. 01A43044 (September 10, 2004) and Bracken v. U.S. Postal Service, EEOC Request No. 05900065 (March 29, 1990).

In Berry v. Board of Supervisors of L.S.U., 715 F. 2d 971, 981 (5th Cir. 1983), the Court set forth three factors relevant to the determination of whether a continuing violation exists: The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (*e.g.*, a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

The complainant studiously avoids providing dates of incident for three of her claims, answering "N/A" or ignoring the question, and indicates that Claims 3 and 4 occurred on November 23, 2022.[23] (ROI, Affidavit A, pp. 6, 11, and 15). The complainant indicates

---

[2] The acceptance letter states that Claim 5 occurred in December of 2022 but when asked to identify the date of incident in her affidavit, the complainant responded "N/A". (ROI, Affidavit A, p. 15).

[3] Supervisor Shequel Clark notes that Claims 3 and 4 could not have occurred on November 23, 2022, since Manager, Distribution Operations Phillips was on vacation during that time period and MDO Phillips had moved to Tour 3 a month earlier and she was the complainant's Manager, Distribution Operations on Tour 1. (ROI, Affidavit C, p. 7). The complainant's PS Form 50 shows that she works on Tour 1. (ROI, Exhibit 1).

Final Agency Decision
Princess Myers
Agency Case Number 1C-731-0359-23
Page 3

that Claim 1 occurred when Mr. Phillips was only the Acting Manager, Distribution Operations which would indicate that it predated the other allegations when he was the permanent Manager, Distribution Operations. (ROI, Affidavit A, p. 6). The complainant states that Claim 2 happened "every night we worked together", which appears to be a significant exaggeration and is not an adequate substitute for a date of incident. Her complaint then identifies three allegations that occurred on the same night in July of 2023. Based on the aforementioned factors, we find that the gap in time between November of 2022 and July of 2023 presents a disconnect and fails to present a series of ongoing and related acts. This conclusion is aided by the fact that the first five allegations are distinctly different from the three which occurred eight months later in terms of the nature of the allegations and the theory of discrimination which would apply to at least two of the July 13, 2023 claims. The evidence leads to the inescapable conclusion that Claims 1 through 5 were added to this complaint as afterthoughts in a misguided effort to increase its heft.

The Commission has held that a significant break in time between allegations does not support a finding that they are part of a series of related events that form a single claim of harassment/hostile work environment. *See* Complainant v. Department of Veterans Affairs, EEOC Appeal No. 0120140317 (April 7, 2014) and Roxane C v. U.S. Postal Service, EEOC Appeal No. 0120160740 (March 15, 2016).

Accordingly, pursuant to 29 C.F.R. §1614.107(a)(2), Claims 1 through 5 are dismissed as untimely filed and disconnected from the three claims alleged to have occurred on July 13, 2023. Assuming, but only for the sake of argument, that the allegations are appropriate for adjudication on their merits and that this dismissal would not be affirmed by an appellate body, this decision will, in the alternative, address the merits of the claims.

## Chronology

This complaint was processed in accordance with the applicable Equal Employment Opportunity Commission (EEOC) regulations, 29 C.F.R. §1614.103 *et seq.* An investigation was conducted, and a copy of the investigative report was transmitted to the complainant on March 27, 2024. Following the receipt of that report, the complainant had 30 days within which to request a hearing before an EEOC Administrative Judge (AJ) or a final agency decision without a hearing. On April 25, 2024, the complainant, through her representative, requested a final agency decision on the merits of the complaint. Thus, this decision is being issued pursuant to the complainant's request.

## Applicable Law

### Disparate Treatment

The United States Supreme Court established a burden-shifting framework for analyzing claims of discrimination in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), and subsequently refined that analysis in Texas Department of Community Affairs v.

Burdine, 450 U.S. 248 (1981).  The McDonnell Douglas and Burdine approach involves a three-step process when a complainant alleges intentional discrimination based on a disparate treatment theory.  A complainant alleging discrimination must first demonstrate that there is some substance to her claim.  To satisfy this burden, the complainant must establish a *prima facie* case of discrimination for each of the bases of discrimination alleged by a preponderance of the evidence. Furnco Construction Company v. Waters, 438 U.S. 576 (1978).  The burden then shifts to the Agency to articulate a legitimate, nondiscriminatory reason for its actions. To ultimately prevail, Complainant must prove, by a preponderance of the evidence, that the Agency's explanation is pretextual. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000); St. Mary's Honor Center v. Hicks, 509 U.S. 502, 519 (1993).

Although a complainant may establish a *prima facie* case by presenting direct evidence of discrimination, the more frequent method of establishing a *prima facie* case is through circumstantial evidence by showing that she: (1) belongs to a protected group; (2) was subjected to an adverse employment action; and (3) was treated differently in this regard than similarly situated individuals who were not members of the protected group.  Hill v. Department of Veterans Affairs, EEOC Appeal No. 0120063979 (November 28, 2007); McCreary v. Department of Defense, EEOC Appeal No. 0120070257 (Apr. 14, 2008). The failure to establish a specific element of a *prima facie* case may be overcome by presenting evidence of agency actions from which an inference of discrimination could be drawn if they remained unexplained.  Day v. U.S. Postal Service, EEOC Appeal No. 01996097 (September 18, 2000).

When there is direct evidence of discrimination, the circumstantial evidence analysis established in McDonnell Douglas Corp. v. Green need not be used. See Wahnee v. Department of the Interior, EEOC Appeal No. 0120055072 (May 7, 2008).

## Similarly Situated Employees

One of the key elements of a *prima facie* case of disparate treatment based on an adverse employment action is proof that similarly situated comparison employees not in the complainant's protected group were treated more favorably.  This is so, in part, because agencies are not monolithic entities.  Turner v. Department of the Navy, EEOC Request No. 05900445 (September 25, 1990).  In general, in the absence of direct evidence of discrimination, if the complainant cannot identify any similarly situated comparison employees who were treated more favorably, he or she will not prevail.  Aguilar v. U.S. Postal Service, EEOC Appeal No. 01944167 (August 8, 1995).

In order for two or more employees to be considered similarly situated for the purpose of creating an inference of disparate treatment, a complainant must show that all of the relevant aspects of her employment situation are virtually identical to those of the other employees who she alleges were treated more favorably.  Smith v. Monsanto Chemical Company, 770 F.2d 719, 723 (8th Cir. 1985).  Since then, the Equal Employment Opportunity Commission has repeatedly ruled in similar fashion.  *See*, for example,

O'Neal v. U.S. Postal Service, EEOC Request No. 05910490 (July 23, 1991); Natalia v. Department of Health and Human Services, EEOC Appeal No. 0120141829 (August 9, 2016); and Pamela W. v. U. S. Postal Service, EEOC Appeal No. 0120151560 (June 28, 2017).

Evidence of discriminatory intent generally relates to the intent (or absence of intent) of the supervisor(s) who recommended and/or took the complained of action. Wilson v. U. S. Postal Service, 01985146 (June 19, 2001) (no intent can be inferred where the comparison employee had a different supervisor). If there is a legitimate reason, the employees are probably not similarly situated. See Lopez v. Department of Health and Human Services, 01832694 (April 5, 1985) (an employee seeking temporary promotion for duties performed out of grade was not similarly situated to employees who were assigned lateral details not involving temporary promotions). Likewise, a casual, temporary employee is not similarly situated to a career employee. See Brown v. U. S. Postal Service, 01852036 (March 20, 1987). Management employees are not similarly situated to employees covered under the agency's collective bargaining procedure, see Nixon v. U. S. Postal Service, 01920713 (June 1, 1992), and generally are not similarly situated to non-managerial employees. See Reams v. Department of Homeland Security, 0120120433 (May 29, 2013).

If employees have different supervisors, perform different job functions, were subject to different job standards, engaged in different conduct, or worked during different time periods, they are not similarly situated. O'Neal, id; Willis v. Department of the Treasury, EEOC Appeal No. 01A51459 (March 16, 2003).

For employees to be considered similarly situated, their medical and physical restrictions must be the same as the complainant's. Woody v. Tennessee Valley Authority, EEOC Appeal No. 0120063987 (December 17, 2007).

## Pretext

Once a *prima facie* case has been established, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. Furnco, 438 U.S. at 578. See also St. Mary's Honor Center v. Hicks, *supra*. The employer need not persuade the trier of fact that the proffered reason was its actual motivation but merely needs to raise a genuine issue of fact as to whether it discriminated against the complainant. Burdine, 450 U.S. at 254; Keval v. Commodity Futures Trading Commission, EEOC Appeal No. 01832127 (November 2, 1984); Hollis v. Department of Veterans Affairs, EEOC Appeal No. 01934600 (May 3, 1994). If the agency offers no adequate explanation for the discrepancy in treatment between the complainant and similarly situated employees, the agency does not carry its burden of production and the complainant prevails on the basis of the inference of discrimination created by the *prima facie* case. Frady v. U.S. Postal Service, EEOC Appeal No. 01A05317 (January 10, 2003); Houston v. Department of Veterans Affairs, EEOC Appeal No. 01976054 (August

27, 1999); and Parker v. U.S. Postal Service, EEOC Request No. 05900110 (April 30, 1990).

If the employer meets this burden, any presumption of discrimination created by the *prima facie* case disappears; it simply "drops from the case." U.S. Postal Service Board of Governors v. Aikens, 460 U.S. 711, 715 (1983); St. Mary's Honor Center v. Hicks, *id* at 507. The complainant can then prevail only if she proves that the employer's reasons are not only pretext but are pretext for discrimination. Hicks, 509 U.S. at 507 and 516; Papas v. U.S. Postal Service, EEOC Appeal No. 01923753 (March 17, 1994) and Bradford v. Department of Defense, EEOC Appeal No. 01940712 (September 20, 1994). Thus, the complainant cannot create a factual issue of pretext based merely on personal speculation that there was discriminatory intent. Lyles v. U.S. Postal Service, EEOC Appeal No. 01A11110 (May 22, 2002); Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008).

The ultimate burden of persuasion remains with the complainant. Board of Trustees of Keene College v. Sweeney, 439 U.S. 24, 25 N.2 (1978). This burden was reaffirmed and clarified in St. Mary's Honor Center v. Hicks, *supra*, where the Court held that in order to impose liability upon an employer for discriminatory employment practices, an ultimate finding of unlawful discrimination is required whether or not the employer's explanation for its action was believable.

Pretext involves more than a mistake. It means that the reason offered by management is factually baseless, is not the actual motivation for the action, or is insufficient to motivate the action. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097 (2000). Internal inconsistencies, implausibility, or contradictions in an employer's explanation of the challenged employment decision may be evidence of pretext for discrimination or retaliation. Nita H. v. Department of the Interior, EEOC Petition No. 0320110050 (July 16, 2014), citing Complainant v. Office of Personnel Management & Social Security Administration, EEOC Appeal Nos. 0120120901 & 0120123038 (Dec. 2, 2013). The complainant always carries the "ultimate burden of persuading the trier of fact that he has been the victim of intentional discrimination." Burdine, 450 U.S. at 254 and Hicks, 509 U.S. at 511.

## Person with a Disability

Discrimination based on disability and the failure to accommodate a qualified individual with a disability in connection with federal employment are prohibited by the Rehabilitation Act of 1973 (29 U.S.C. §791). The Rehabilitation Act Amendments of 1992 (P.L. 102-569, October 29, 1992) added a new Subsection (g) to 29 U.S.C. §791 making it clear that the same standards which apply to claims under the Americans with Disabilities Act are to be applied to Rehabilitation Act claims. On January 1, 2009, the ADA Amendments Act of 2008 (P.L. 110-325, September 25, 2008) became law, addressing what Congress viewed as unduly restrictive interpretations of the ADA by the courts and administrative bodies. Following its passage, courts have consistently held that the ADA Amendments

Act should not be applied retroactively. *See* EEOC v. Agro Distribution, LLC, 555 F. 3d 462 (5th Cir. 2009) and Lytes v. D.C. Water and Sewer Authority, 572 F. 3d 936 (D.C. Cir. 2009). The EEOC promulgated regulations implementing the ADA Amendments Act on March 25, 2011.

In order to assert a claim of disability discrimination, a complainant must satisfy the threshold requirement that she is a "person with a disability" as that term is defined in the applicable statutes and Equal Employment Opportunity Commission regulations. Title 42, United States Code, Section 12102(1) and 29 C.F.R. §1630.2(g)(1) define a person with a disability as an individual who: (i) has a physical or mental impairment which substantially limits one or more of that person's major life activities (referred to elsewhere in the regulations as "actual disability"); (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment. *See also* Melahn v. Department of the Navy, EEOC Appeal No. 01832380 (October 21, 1985). Whether an individual has a disability is not based on the name or diagnosis of the impairment involved but rather the effect which that impairment has on the individual.

## Person with a Disability – Actual Disability

The definition of what constitutes a "physical or mental impairment" remains very broad. See 29 C.F.R. §1630(h)(1) and (2). According to the Americans With Disabilities Act (ADA), the Americans With Disabilities Act Amendments Act (ADAAA), and EEOC regulations, major life activities include, but are not limited to, caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. *See* 42 U.S.C. §12102(2)(A) and 29 C.F.R. §1630.2(h)(2)(i)(1)(i). They also include standing, lifting, bending, reading, concentrating, thinking, communicating, and eating. The ADAAA also included within the definition of major life activity a category of major bodily functions which include functions of the immune system and normal cell growth, and respiratory, circulatory, endocrine, reproductive, digestive, neurological, brain, bowel, and bladder functions. 42 U.S.C. §12102(2)(B) and 29 C.F.R. §1630.2(h)(2)(i)1)(ii).

The ADAAA made it clear that Congress believed that the courts and the Equal Employment Opportunity Commission had been too narrow in their interpretations of the term "substantially limits" and instructed them to apply that term "…consistently with the findings and purposes of the ADA Amendments Act of 2008" and to construe the Act in favor of "broad coverage." *See* 42 U.S.C. §12101(a)(1) and (b)(1). The Act and its implementing regulations create nine "Rules of Construction" to be applied to determine whether or not an impairment is substantially limiting. 42 U.S.C. §12102(4) and 29 C.F.R. §1630.2(j)(1). Besides calling for broad and consistent coverage and an "individualized assessment", the rules provide that an impairment is disabling if it substantially limits an individual's ability to perform a major life activity in comparison to "most people in the general population." In making this comparison, the regulations call for consideration of the difficulty, effort, or time required by the individual to perform the major life activity; the length of time the activity can be performed; the way in which the major life activity is

Final Agency Decision
Princess Myers
Agency Case Number 1C-731-0359-23
Page 8

affected by the impairment involved; and the non-ameliorative effects of mitigating measures such as the side effects of medication.  *See* 29 C.F.R. §1630.2(j)(4).  This regulation also makes clear that the focus should be on the effort required not the outcome that can be achieved by the individual with the impairment.

In addition, an impairment need only affect one major life activity to be substantially limiting; an impairment need not "significantly restrict" in order to be substantially limiting; and a determination concerning the application of the term should not require "extensive analysis" and not usually require scientific, medical, or statistical analysis.  The rules also state that episodic impairments or those in remission can be substantially limiting if they would be so when they are active and that even conditions which have less than a six-month duration could be substantially limiting.

29 C.F.R. §1630.2(j)(3), Predictable Assessments.  Significantly, the Commission states in its regulations that the application of these rules of construction to certain medical conditions will "… in virtually all cases, result in a determination of coverage…" when assessing a possible "actual disability" (as distinguished from a "regarded as" disabled) situation.  Therefore, with respect to these types of impairments, the necessary individualized assessment should be particularly simple and straightforward.  For example, deafness substantially limits hearing; blindness substantially limits seeing; an intellectual disability (formerly termed mental retardation) substantially limits brain function; partially or completely missing limbs or mobility impairments requiring the use of a wheelchair substantially limit musculoskeletal function; autism substantially limits brain function; cancer substantially limits normal cell growth; cerebral palsy substantially limits brain function; diabetes substantially limits endocrine function; epilepsy substantially limits neurological function; Human Immunodeficiency Virus (HIV) infection substantially limits immune function; multiple sclerosis substantially limits neurological function; muscular dystrophy substantially limits neurological function; and major depressive disorder, bipolar disorder, post-traumatic stress disorder, obsessive compulsive disorder, and schizophrenia substantially limit brain function. The types of impairments described in this section may substantially limit additional major life activities not explicitly listed above.

The ADAAA eliminated consideration of the ameliorative effects of mitigating measures when determining whether or not an impairment is substantially limiting except for consideration of ordinary eyeglasses or contact lenses intended to correct visual acuity or eliminate refractive error.  Mitigating measures include medication; medical supplies, equipment, or appliances; assistive technologies; low vision devices; hearing aids and implants; mobility devices; oxygen therapy equipment and supplies; prosthetics; and "reasonable accommodations or auxiliary aids or services", *e.g.* interpreters or readers or the modification of equipment.  *See* 42 U.S.C. §12102(4)(E) and §12103 and 29 C.F.R. §1630.2(j)(5) and (6).

A generalized assertion, without specific evidence to support it, that an individual is substantially limited is not sufficient to satisfy a complainant's burden of proof.  Lohr v.

U.S. Postal Service, EEOC Request No. 05930799 (May 19, 1994); Zeigler v. U.S. Postal Service, EEOC Appeal No. 01930854 (May 12, 1994) and Jenkins v. U.S. Postal Service, EEOC Appeal No. 01954572 (March 24, 1997). It is also not enough that the agency is in possession of a diagnosis; that an individual's supervisor knows that they have a particular condition; that the complainant has an approved claim with the Office of Workers Compensation Programs; or that the complainant has a percentage disability awarded by the Department of Veterans Affairs. Black v. U.S. Postal Service, EEOC Request No. 05930748 (May 12, 1994); Pascale v. Department of the Navy, EEOC Petition No. 03850092 (March 5, 1986); Schnabele v. U.S. Postal Service, EEOC Appeal No. 01982634 (July 13, 2001); and Bono v. U.S. Postal Service, EEOC Appeal No. 01951113 (August 11, 1997).

## Retaliation

To establish a *prima facie* case based on reprisal, a complainant must show that: (1) she engaged in prior protected activity; (2) the agency official who took the adverse employment action was aware of the protected activity; (3) she was subsequently disadvantaged by an adverse employment action or adverse treatment; and (4) there is a causal link between the protected activity and adverse action/treatment. Hochstadt v. Worcester Foundation for Experimental Biology, Inc., 425 F. Supp. 318, 324 (D. Mass 1976), aff'd 545 F.2d 222 (1st Cir. 1976); Anastacia D. v. Department of Justice, EEOC Appeal No. 2019002640 (June 30, 2020) citing Whitmire v. Department of the Air Force, EEOC Appeal No. 01A00340 (September 25, 2000).

A complainant may establish prior EEO activity by participating at any stage of the EEO process or opposing unlawful discriminatory conduct. *See*, generally, Lewis v. Department of the Navy, EEOC Appeal No. 01810158 (May 22, 1981) (counseling stage); Ballard v. U.S. Postal Service, EEOC Appeal No. 01923276 (August 17, 1992) (witness); and Burrough v. U.S. Postal Service, EEOC Appeal No. 01842417 (June 24, 1986) (representative).

A complainant may also establish a *prima facie* case by presenting evidence which, if it was not explained, would reasonably give rise to an inference of reprisal. Tarver v. U.S. Postal Service, EEOC Appeal No. 0120102208 (September 2, 2010), citing Shapiro v. Social Security Administration, EEOC Request No. 05960403 (December 6, 1996). Obviously, the complainant must offer evidence that the agency officials who took the action were aware of her prior participation or opposition activity, Demeier v. Department of the Air Force, EEOC Appeal No. 01A11166 (May 23, 2002). Adverse actions need not be ultimate employment actions, just adverse treatment based on a retaliatory motive, which could deter a reasonable person from engaging in protected activity. Burlington Northern Santa Fe Railway Company v. White, 548 U.S. 53 (2006).

The causal connection may be inferred by evidence that the protected conduct was closely followed by the adverse action. Clark County School District v. Breeden, 532 U.S. 286 (2001). The Court in Breeden noted that where a complainant is relying on temporal

Final Agency Decision
Princess Myers
Agency Case Number 1C-731-0359-23
Page 10

proximity to establish a causal connection between prior protected activity and a current adverse employment action, that proximity must be "very close" and cited with approval Circuit Court of Appeals decisions holding that time gaps of three to four months between an individual's prior EEO activity and the current adverse employment action were too attenuated to suggest an inference of retaliation. The Commission has followed suit and rendered decisions establishing much shorter time frames to establish the requisite temporal proximity. See, for example, Heads v. U.S. Postal Service, EEOC Appeal No. 01A51547 (June 2, 2005); Archibald v. Department of Housing and Urban Development, EEOC Appeal No. 01A54280 (September 22, 2005); and Lynch v. U.S. Postal Service, EEOC Appeal No. 01A24705 (August 14, 2003).

## Sexual Harassment

Both the Equal Employment Opportunity Commission and the courts have long recognized that sexual harassment in the workplace constitutes a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. *See, e.g.*, Henson v. City of Dundee, 682 F. 2d 897 (11th Cir. 1982), Katz v. Dole, 709 F. 2d 251 (4th Cir. 1983), Bundy v. Jackson, 641 F.2d 934 (D.C. Cir. 1981). *EEOC Policy Guidance on Current Issues of Sexual Harassment*, 8 Fair Empl. Prac. Manual (BNA) 405:6681, 6689 (No. 915-050, March 19, 1990).

Sexual harassment is defined by EEOC's regulations published in 29 C.F.R. Section 1604.11. The regulations state in pertinent part:

(a) Harassment on the basis of sex is a violation of section 703 of Title VII. Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment.

Title VII prohibits sexual harassment between members of the same sex as well as harassment between members of the opposite sex. Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75 (1998).

A violation of Title VII may be predicated on either of two types of sexual harassment. The first type, tangible employment action sexual harassment, results in the denial of specific employment benefits because of a refusal to submit to sexual advances. The second type, "hostile environment" sexual harassment, does not directly affect economic benefits, but creates a hostile or offensive working environment. Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, (1986).

Final Agency Decision
Princess Myers
Agency Case Number 1C-731-0359-23
Page 11

In order to establish a *prima facie* case of hostile environment sexual harassment, a complainant must present evidence: (1) that she belongs to a protected class; (2) that she was subjected to unwelcome verbal or physical conduct of a sexual nature; (3) that the harassment complained of was based on sex; and (4) that the harassment was sufficiently severe or pervasive to affect a term or condition of employment, and/or that the harassment had the purpose or effect of unreasonably interfering with her/his work performance and/or of creating an intimidating, hostile, or offensive work environment. McGinnis v. Secretary of Defense, EEOC Appeal No. 01902760 (November 15, 1990); Sexton v. U. S. Marine Corps, EEOC Appeal No. 01821475 (August 30, 1983); Cudjoe v. Secretary of the Navy, EEOC Appeal No. 01880743 (June 14, 1988). In cases of sexual harassment by coworkers or other non-supervisors, the complainant must also show as part of the prima facie case that management failed to take prompt and appropriate action although it was aware of the harassment. Lutticken v. Secretary of Health and Human Services, EEOC Request No. 05900386 (April 27, 1990).

Title VII does not proscribe all conduct of a sexual nature in the workplace. Sexual flirtation or innuendo, and even vulgar language that is trivial or merely annoying, would probably not establish a hostile working environment. *EEOC: Policy Guidance on Current Issues of Sexual Harassment, supra.* For sexual harassment to be considered discriminatory, it must be pervasive or severe. Hicks v. Gates Rubber Co., 833 F.2d 1406 (10th Cir. 1987). Actual psychological or emotional injury is not required. Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993) (so long as the environment would reasonably be perceived, and is perceived, as hostile or abusive, there is no need for it also to be psychologically injurious). However, unless the conduct is very severe or persistent, a single incident or group of isolated incidents will not be regarded as discriminatory harassment. *See e.g.* Scott v. Sears Roebuck and Co., 605 F. Supp. 1047 (DC Ill 1985), aff'd, 798 F.2d 210 (7th Cir. 1986); Hansen v. Rice, EEOC Appeal No. 01920621 (September 10, 1992).

The following factors are pertinent to determining whether a work environment is hostile, intimidating, or abusive: (1) whether the conduct in question is verbal or physical, or both; (2) whether the conduct was repeated, and, if so, how frequently; (3) whether the conduct was hostile or patently offensive; (4) whether the alleged harasser was a supervisor or a coworker; (5) whether more than one person joined in the harassment; and (6) whether the harassment was directed at more than one individual. King v. Hillen, 21 F.3d 1572 (Fed. Cir. 1994); Crane, EEOC Appeal No. 01924585 (April 22, 1993). Evidence of the general working atmosphere involving employees other than the complainant is also relevant to the issue of whether a hostile work environment exists. Vinson v. Taylor, 753 F.2d 141 (D.C. Cir. 1985), aff'd in relevant part and rev'd in part, *sub nom*; Meritor Federal Savings Bank v. Vinson, 477 U.S. 57 (1986); Delgado v. Lehman, 665 F. Supp. 460 (E.D. Va. 1987).

The conduct in question should be evaluated from the standpoint of a reasonable person, taking into account the particular context in which it occurred. Highlander v. K.F.C. National Management Co., 805 F.2d 644 (6th Cir. 1986). Conduct that is not severe or

Final Agency Decision
Princess Myers
Agency Case Number 1C-731-0359-23
Page 12

pervasive enough to create an objectively hostile or abusive environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview. Harris, p. 228. Title VII does not serve "as a vehicle for vindicating the petty slights suffered by the hypersensitive." Zabkowicz v. West Bend Co., 589 F.Supp. 780, 784 (E.D. Wis. 1984). Thus, if the challenged conduct would not substantially affect the work environment of a reasonable person, no violation should be found. *EEOC: Policy Guidance*, 405: 6689. Furthermore, if the complainant does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of employment, and there is no Title VII violation. Harris, pp. 227, 228.

A *prima facie* case of hostile environment sexual harassment may be rebutted by the production of evidence to show that: (1) the alleged conduct did not occur; (2) the conduct complained of was not unwelcome; and/or (3) the alleged harassment was not sufficiently severe or pervasive to adversely affect the complainant's employment opportunities, to unreasonably interfere with the complainant's performance, or to create an abusive working environment. McGinnis, EEOC Appeal No. 01902760; Quinn v. Postmaster General, EEOC Request No. 05900546 (August 23, 1990); Crane v. Postmaster General, EEOC Appeal No. 01924585 (April 22, 1993).

Even where harassment has occurred, management may avoid Title VII liability for the harassment by showing that: (1) management took prompt, effective, and appropriate remedial action as soon as it became aware of the circumstances (a defense which applies only to sexual harassment by coworkers or other non-supervisors); and/or (2) there is no basis under agency principles for imputing liability to the employer. McGinnis, EEOC Appeal No. 01902760; Quinn v. Postmaster General, EEOC Request No. 05900546 (August 23, 1990); Crane v. Postmaster General, EEOC Appeal No. 01924585 (April 22, 1993).

Under agency principles, management is liable for sexual harassment by a supervisor with immediate or successively higher authority over a victimized employee. The supervisor must have the power to make a significant change in the employee's employment status, such as through hiring, firing, failing to promote, reassignment with significantly different responsibilities or causing a significant change in benefits. *See*, Vance v. Ball State University, 570 U.S. 421 (2013). However, where no tangible employment action has been taken by the supervisor, management may avoid liability by showing: (1) that management exercised reasonable care to prevent and correct promptly any harassing behavior; and (2) that the complainant unreasonably failed to take advantage of any preventative or corrective opportunities provided by management or to avoid harm otherwise. Management bears the burden of proof on this affirmative defense. Management may not avoid liability when the supervisor's harassment culminates in a tangible employment action. A "tangible" employment action is one that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, demotion, or a decision causing a significant change in benefits. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998); Faragher v. City of Boca Raton, 524 U.S. 775 (1998).

Final Agency Decision
Princess Myers
Agency Case Number 1C-731-0359-23
Page 13

Applying the foregoing principles to the complainant's allegations of sexual harassment, we must first determine whether the alleged harassing conduct occurred. Then we must determine whether the conduct that occurred constitutes sexual harassment within the meaning of Title VII. If discriminatory sexual harassment is found, we must then determine whether management is liable for the harassment.

## Background

At all times relevant to the issues in this complaint, the complainant was employed as a Mail Handler Equipment Operator at the New Orleans, Louisiana Processing and Distribution Center. (Report of Investigation [ROI], Affidavit A, p. 2 and Exhibit 1). The complainant has alleged that Manager, Distribution Operations Michael Phillips subjected her to sexual harassment and disparate treatment through his unwelcome comments and gestures, his decision not to require a non-career employee to relinquish a piece of powered industrial equipment, and his decision to place the complainant off the clock on July 13, 2023, and comments made when he did so. (ROI, Claims to be Investigated).

Claims 6, 7, and 8

The complainant states that she called in that she would be two hours late on July 13, 2023, and when she arrived, she discovered that there was no available powered industrial equipment, so she apparently directed a non-career employee to give up the equipment he was driving. She asserts that Manager, Distribution Operations (MDO) Michael Phillips told her that the non-career employee was only licensed to drive that type of equipment, which she says was untrue, and that it would not be fair to the individual to have him give up the equipment.[4] According to the complainant, MDO Phillips allegedly told her to get back downstairs and look for equipment and then put her out of the building. She says that Supervisor, Distribution Operations Veronica Scott asked her to leave because Mr. Phillips was calling the police and Ms. Scott did not want to see her escorted out by the police. She contends that she has not been paid for her time that night. The complainant also claims that during the argument with MDO Phillips, he stated that she would be working at Burger King, that he could have taken care of her but now she would have to rely on others to do that, and that he hoped that she had a car payment and bills to pay. She says that she told him that she could take care of herself. The complainant observes that all of the complaints against Mr. Phillips have been filed by women, that he treats women like trash, and that everyone who gave a statement to Supervisor Veronica Scott has been retaliated against.[5] (ROI, Affidavit A, pp. 18-27).[6]

---

[4] Driving the equipment would have been a higher-level pay opportunity for the non-career employee. The complainant would have been paid her Level 5 rate whether or not she was operating powered industrial equipment.

[5] What those statements discussed or alleged is not described.

[6] The record does not include any evidence concerning an emergency placement, the reason why the complainant remained on leave without pay from July 10 through August 25 and then was placed on administrative leave from August 28, 2023, through March 27, 2024. The record does include an October 17, 2023 Step 3 grievance resolution making the complainant whole for time off after July 14 until she

Final Agency Decision
Princess Myers
Agency Case Number 1C-731-0359-23
Page 14

### *Prima Facie* Analysis

## Retaliation

The record shows that the instant complaint is the complainant's only participation in EEO activity. (ROI, Exhibit 2). The complainant appears to contend that she has opposed discrimination by objecting to Manager, Distribution Operations Michael Phillips' behavior to three regular supervisors, a temporary supervisor and three union officials. It also appears that the complainant is claiming that some of these individuals witnessed the behavior to which she objected. (ROI, Affidavit A, p. 3-4). Former Manager, Distribution Operations Shequel Clark indicates that she was not aware of any EEO activity by the complainant and that the complainant never came to her to complain about Mr. Phillips. She testifies that the complainant and Mr. Phillips were "cool", and that the complainant would speak with Mr. Phillips all of the time and seek his intervention with other supervisors when she disagreed with instructions she had been given. (ROI, Affidavit C, pp. 2, 4, and 7).

Former Supervisor, Distribution Operations Valtreana Griffin indicates that the complainant had spoken to her about Mr. Phillips but had not claimed that she was being harassed. (ROI, Affidavit D, p. 2). Supervisor Veronica Scott did not respond to the request for an affidavit and Supervisor, Maintenance Operations Sharon Walker mentions that she was not aware of any EEO activity by the complainant and notes that the complainant spoke to her once about being called a "tall drink of water." (ROI, Affidavit F, p. 7). Clerk-craft steward Tyra Causey says that the complainant came to her "after the incident" and that she had advised the complainant to prepare a statement. The "incident" to which she is referring is not clear but is likely the verbal altercation on July 13, 2023. (ROI, Post-Investigation Documents, pp. 1-2). The complainant asserts that the retaliation occurred after she provided a statement about her interactions with Manager, Distribution Operations Phillips to Supervisor Veronica Scott. She claims to have submitted the statement two weeks before she was put on emergency placement which would be in late June or early July of 2023. (ROI, Affidavit A, p. 10).

The evidence is not sufficient to support a conclusion that the complainant opposed unlawful discrimination prior to July of 2023. None of the witnesses who provided affidavits support the complainant's contentions that she repeatedly complained about Mr. Phillips' comments, some of which have no reference whatsoever to the complainant's gender; *e.g.* "tall drink of water" and working at Burger King. Moreover, the complainant seems to acknowledge that she did not choose to complain to anyone other than Mr. Phillips, claiming that it would be a waste of time since Mr. Phillips was, allegedly, "untouchable." (ROI, Affidavit A, pp. 11 and 16). She acknowledges that she did not choose to provide a statement to Supervisor Veronica Scott until sometime in or around July of 2023 and the record shows that she did not call the Office of the Inspector General

---

returned to work because her placement off the clock was procedurally defective. The decision did not identify a date of return. (ROI, Counselor's Report, p. 21 and Exhibit 5).

hotline until July 14, 2023, after she had been put off the clock. (ROI, Affidavit A, p. 10 and Exhibit 4, p. 4).

The record is insufficient to establish that the complainant had prior protected EEO activity before July of 2023. Consequently, her retaliation claim can only apply to Claims 6, 7, and 8.

## Disability

The complainant must show that she was a "person with a disability" within the meaning of the Rehabilitation Act of 1973. Thus, there must be evidence that the complainant: (1) has a physical or mental impairment which substantially limits one or more of that person's major life activities; or (2) has a record of such impairment. The complainant states that she struggles with anxiety but does not take medication and acknowledges that she did not tell anyone about her condition because "nothing is confidential in this building." She maintains that she could perform all of her duties except when Mr. Phillips was "cat calling" and saying "inappropriate things." (ROI, Affidavit A, pp. 4-5). This would not establish that she was substantially limited in any major life activity. The complainant did not submit any medical documentation for the record and none of the witnesses who provided affidavits were aware that the complainant had a medical condition. Former Supervisor Valtreana Griffin was not asked about whether she was aware that the complainant had a medical condition. (ROI, Affidavit C, p. 3, Affidavit D, and Affidavit F, p. 3). When the complainant was asked why she believed that her medical condition was a factor in management's actions, the complainant answered "N/A". (ROI, Affidavit A, pp. 10, 12, 17, 19, 22, and 25). This would constitute a withdrawal of the basis of disability discrimination.

## Disparate Treatment

The Commission has held that allegations of harassing conduct that include discrete acts that would independently state claims outside of a harassment framework, assuming that they are timely, are properly reviewed in the context of disparate treatment. Conlin v. Department of Veterans Affairs, EEOC Appeal No. 0120055310 (December 5, 2006). This complaint includes two timely discrete acts, Claims 6 and 8. Claim 7 will be analyzed with Claim 8 because it is directly related, albeit not a discrete act.

As noted previously, the complainant may establish a *prima facie* case of disparate treatment by showing that she: (1) belongs to a protected class; (2) was subjected to an adverse employment action; and (3) was treated differently in this regard than similarly situated individuals who were not members of the protected group. Hill, *supra*.

The complainant has failed to establish a *prima facie* case of disparate treatment because she has failed to identify any similarly situated co-workers who were treated more favorably in connection with powered industrial equipment allocations or emergency placements. Concerning whether or not another, presumably male employee should

have had to relinquish the "slay" to her, the complainant does not identify the other employee and asserts that his status as a non-career employee was the reason he should have been told to give her the equipment. The complainant identifies her status as a Level 5 Mail Handler as giving her the right to bump the other employee off of the equipment.[7] The unidentified comparison employee is not similarly situated to the complainant since the equipment had already been assigned to him in the absence of the complainant, he was already gainfully employed, powered industrial equipment does not belong to individual employees, and there is not evidence in the record that she had a superior claim on the equipment. When the complainant arrived late for work, all of the equipment had been assigned. (ROI, Affidavit A, p. 18).

The complainant did not identify any male co-workers who were engaged in a similar altercation with their manager or supervisor who were not placed off the clock. The two individuals identified by the complainant by their first names only, were both females, and were not involved in comparable situations. The complainant alleges that one sleeps on duty and does not have to bring in mail from the dock and the other leaves her work area and is missing for hours. Neither is similarly situated to the complainant. (ROI, Affidavit A, pp. 25-26).

It is noteworthy that the complainant failed to cite similarly situated employees who were treated more favorably based on their membership in a protected group. In general, in the absence of direct evidence of discrimination, if the complainant cannot identify any similarly situated comparison employees who were treated more favorably, she will not prevail. Aguilar, supra.

While the complainant is not limited to presenting comparative evidence to establish a *prima facie* case of disparate treatment discrimination (*See* Lipcsey v. U.S. Postal Service, EEOC Appeal No. 01981884 (January 6, 2000)), she has not presented any other evidence that affords a sufficient basis from which to draw an inference of discrimination.

### Management's Non-Discriminatory Reason

Assuming, but only for the sake of argument, that the complainant has established a *prima facie* case of discrimination based on sex, disability, or retaliation, management has articulated a legitimate, non-discriminatory explanation for their actions.

Manager, Distribution Operations Michael Phillips told the EEO Counselor that on July 13, 2023, the operation was already in progress when the complainant reported late for work and employees had already been assigned to the available equipment. He indicates that it would have been unfair to remove the assigned Mail Handler Assistant from the

---

[7] The complainant states that she went to see her steward after she was told that the non-career employee would retain the equipment. This is the proper forum for the complainant and the two Level 5 co-workers who she claims were also told there was no available equipment to raise this allegation. (ROI, Affidavit A, pp. 20 and 27).

equipment that had been assigned to him. Mr. Phillips denies that he ever discussed this issue with the Mail Handlers union. He also asserts that the complainant cursed him, called him a "crack head", said "F--- you", and told him that she had a boyfriend who would come around and "f--- him up." He indicates that this was why he sent the complainant home. (ROI, Counselor's Report, p. 4).

Based on the evidence in the record, management has established their non-discriminatory reasons for their actions. This analysis will now address whether there is evidence of pretext.

### Pretext-Discrete Act(s)

At this point, the complainant has the burden of proving that management's stated reason is not only pretext but is pretext for discrimination. St. Mary's Honor Center v. Hicks, *supra*. The complainant always carries the "ultimate burden of persuading the trier of fact that he has been the victim of intentional discrimination." Burdine, *supra*.

The complainant has not offered any evidence suggestive of pretext. Claiming that all of the EEO complaints against Mr. Phillips have been filed by women, even if accurate, is not proof of that she was subjected to sex discrimination in connection with the events of July 13, 2023. As noted previously, there is no direct evidence of discrimination and the complainant's comparative evidence is not relevant and unpersuasive. Comments about working at Burger King, crudely referring to having to rely on others to take care of her, and allegedly hoping that she would experience financial difficulty, if made as alleged, might reflect things said in the course of a heated argument but do not imply sex, disability, or reprisal discrimination. Although implied by the complainant, there is no persuasive evidence to indicate that Mr. Phillips' decision to put the complainant off the clock on July 13, 2023, was due to her sex or providing a statement to Supervisor Scott. Based on the information provided for the record, the complainant has failed to prove by a preponderance of the evidence that allowing another employee to retain a piece of powered industrial equipment or putting her off the clock for disrespect and threats to her manager were motivated by her sex, EEO activity, or anxiety.

The complainant's allegations were not supported by the totality of the record, and she has failed to present any plausible evidence that would have demonstrated that management's reasons for its action were factually baseless or not its actual motivation. Reeves v. Sanderson Plumbing Products, Inc, *supra*. It should be noted that a complainant's subjective beliefs cannot be probative evidence of pretext, and therefore, cannot be the basis of judicial relief. Elliot v. Group Medical & Surgical Service, 714 F.2d 556, 557 (5th Cir. 1983), *cert. denied*, 467 U.S. 1215, (1984). The complainant cannot second-guess the wisdom of the agency's business decisions. Thus, agencies are free to discharge, promote, demote, or transfer individuals for any reason, fair or unfair, so long as the decision is not a pretext for discrimination. Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir. 1999); Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984).

In other words, there was nothing that showed by a preponderance of the evidence that the legitimate explanations given by the agency were pretext for discrimination. Hammons v. HUD, EEOC Request No. 05971093 (May 5, 1999). Hence, the complainant has not shown that the explanation of the agency for its action was simply a pretext for discrimination.

### *Prima Facie* **Analysis – Harassment/Hostile Work Environment**

To establish a *prima facie* case of hostile work environment harassment, a complainant must establish that: (1) she is a member of a protected group; (2) that she was subjected to unwelcome verbal or physical conduct; (3) that the conduct was based on the complainant's protected status; and (4) that the conduct was sufficiently severe or pervasive that it created a hostile, abusive, or offensive work environment or unreasonably interfered with the complainant's work performance; and (5) that there is a basis for imputing liability to the employer. McCleod v. Social Security Administration, *supra*.

The complainant has established the first element of her hostile work environment claim because she is female. As noted previously, she did not establish that she had EEO activity prior to July of 2023 or that she is a person with a disability or has a medical condition of which management was aware.

Concerning unwelcome activity, having already shown that management acted appropriately with regard to the claims analyzed above as discrete acts, they cannot, without more, form the basis for or contribute support to a hostile work environment claim. *See* Oakley v. United States Postal Service, EEOC Appeal No. 01982923 (2000) and Staples v. Department of Veterans Affairs, EEOC Appeal No. 0120091013 (2010). A review of the record shows that there may have been an argument on July 13, 2023, but that it was the complainant's verbiage and behavior that rose to the level of unacceptable conduct. Consequently, the complainant cannot satisfy the second or third elements as to Claims 6, 7, and 8, the discrete acts analyzed above.

The complainant alleges that Manager, Distribution Operations (MDO) Phillips blew her a kiss on an unidentified date and that this was witnessed by Ms. Tyra Causey. Ms. Causey does not mention this incident in her affidavit. (ROI, Affidavit A, p. 6 and Post-Investigation Documents, Affidavit G, pp. 1-2). The complainant alleges, with some exaggeration, that every day she worked with MDO Phillips he asked her for a date. She indicates that her response was to ignore him and to tell him that this meant to stop asking. The complainant contends, and others corroborate, that MDO Phillips would call her a "tall drink of water" and refer to her as "baby". Mr. Phillips told the EEO Counselor that he often assigns nicknames to people and said those things because the complainant is tall and because everyone in New Orleans refers to others as "Baby". Mr. Phillips claims that the complainant never objected to his referring to her by other than her given name. He also contends that it is culturally common to hug someone hello in New Orleans. The complainant states that she was returning from an extended sick leave

Final Agency Decision
Princess Myers
Agency Case Number 1C-731-0359-23
Page 19

absence after surgery and MDO Phillips said that he had missed her and gave her a hug. The pressure allegedly exerted is not indicative of discrimination. (ROI, Affidavit A, p. 11). Mr. Phillips denies that he said anything about the complainant having his baby, noting that he has enough children, is in his sixties, and close to retirement. (ROI, Counselor's Report, p. 4). The complainant says that occurred and that co-worker Antonio Sterling was present. Mr. Sterling gave a statement to the Office of the Inspector General but failed to provide an affidavit asking that he state what he knew under penalty of perjury. (ROI, Affidavit H). The complainant admits that she did not report this at the time it allegedly happened. (ROI, Affidavit A, p. 16).

There is some doubt as to whether some of these events occurred or occurred as represented by the complainant. Only one allegation, Mr. Phillips' use of "tall drink of water" or "Baby", is corroborated in an affidavit by other witnesses. Former Tour 1 Manager, Distribution Operations Shequel Clark states in her affidavit that the complainant and Manager, Distribution Operations Phillips were "cool" and that they spoke all of the time, presumably during the time their Tour 3 and Tour 1 schedules overlapped. Ms. Clark notes that Claims 3 and 4 could not have occurred as alleged by the complainant and points out that Mr. Phillips moved to Tour 3 in October of 2022 and would end his tour at 0230. The complainant works on Tour 1. She adds that the complainant would go to Mr. Phillips if she had issues with instructions given by other supervisors and would not listen to anyone but Mr. Phillips. She was at a loss to explain why the complainant would be making these charges. Former MDO Clark also indicates that the complainant had made the same threat to another employee about having her boyfriend beat him up that Mr. Phillips claims the complainant made to him on July 13, 2023. (ROI, Affidavit C, p. 4 and 7).

There is no evidence in the record that any of these interactions occurred because of the complainant's EEO activity, which was yet to occur, or a medical condition of which her management was unaware. There is a valid assumption that at least some of these actions, if they occurred, were motivated by the complainant's gender. As noted above, there is doubt as to whether the incidents occurred at all or as alleged by the complainant.

The record shows that the incidents that the complainant complains of are neither severe nor pervasive, either individually or collectively, when judged by a reasonable person's standards. It bears mentioning that the complainant did not seek to have Mr. Phillips alleged behavior, which by her own account occurred in 2022, investigated until July of 2023 at the same time that she was placed off the clock for disrespect and allegedly threatening MDO Phillips. A delay of that length leads to the conclusion that the complainant did not consider the conduct, whatever it was, to be severe. If she did, she would undoubtedly have contacted the Office of the Inspector General earlier. Moreover, the incidents that might have been regarded as severe are those which are denied by Mr. Phillips and not corroborated by sworn testimony. What is corroborated could not be regarded as severe. Calling a tall person a "tall drink of water" is not even mildly annoying and referring to someone as "Baby" is annoying but does not approach severity. The

significant gap between the last of the harassing allegations and the July 13, 2023 allegations argues against pervasiveness.

## Conclusion

After carefully considering the entire record, and applying the legal standards outlined in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973); Prewitt v. U.S. Postal Service, 662 F.2d 292 (5th Cir. 1981) (applying to cases brought under the Rehabilitation Act); Hochstadt v. Worcester Foundation for Experimental Biology, Inc., 425 F.Supp. 318 (D.Mass 1976), *aff'd* 545 F.2d 222 (1st Cir. 1976) (applying to reprisal cases); and Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993), citing Meritor Savings Bank F.S.B. v. Vinson, 477 U.S. 57 (1986) and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998) (applying to harassment cases), the evidence does not support a finding that the complainant was subjected to discrimination as alleged. Consequently, this complaint is now closed with a finding of no discrimination.

## Appeal Rights

## APPEAL TO EEOC

The complainant has the right to appeal the Postal Service's final decision to the Director, Office of Federal Operations, **within 30 calendar days of receipt of this decision.** The complainant may file the appeal by several alternative methods. The complainant may use the EEOC's Public Portal located at https://publicportal.eeoc.gov/ where the complainant can also upload selected documents and manage personal and representative information. The complainant may mail the appeal to the Director, Federal Operations, Equal Employment Opportunity Commission (EEOC), P.O. Box 77960, Washington, DC 20013-8960 or submit by facsimile to (202) 663-7022. If the complainant elects to file an appeal by mail or fax, the complainant must use EEOC Appeal Form 573, a copy of which is enclosed. Any supporting statement or brief must be submitted to the EEOC within **30 calendar days of filing the appeal**.

If the complainant uses EEOC's Public Portal to file an appeal or submit a brief, the complainant does not need to serve the agency. If the complainant mails or faxes the request for an appeal, the complainant must also submit a copy of the appeal or brief to the NEEOISO – FAD, National EEO Investigative Services Office USPS, P.O. Box 21979, Tampa, FL 33622-1979 and submit proof to the EEOC that a copy of the appeal and any supporting documentation or brief were also submitted to the NEEOISO.

The complainant is advised that if the complainant files an appeal beyond the 30-day period set forth in the Commission's regulations, the complainant should provide an explanation as to why the appeal should be accepted despite its untimeliness. If the complainant cannot explain why the untimeliness should be excused in accordance with EEOC Regulation 29 C.F.R. §1614.604, the Commission may dismiss the appeal as untimely.

Final Agency Decision
Princess Myers
Agency Case Number 1C-731-0359-23
Page 21

## RIGHT TO FILE A CIVIL ACTION

Alternatively, if the complainant is dissatisfied with the Postal Service's decision in this case, the complainant may file a civil action in an appropriate U.S. District Court within 90 calendar days of receipt of the Postal Service's final decision, within 90 calendar days of the EEOC's final decision on any appeal, or after 180 days from the date of filing an appeal with the EEOC if no final decision has been rendered. If the complainant chooses to file a civil action, that action should be styled **Princess Myers v. Louis DeJoy, Postmaster General**. The complainant may also request the court to appoint an attorney for the complainant and to authorize the commencement of that action without the payment of fees, costs, or security. Whether these requests are granted or denied is within the sole discretion of the District Judge. The application must be filed within the same 90-day time period for filing the civil action.


*Paula Upton*

Paula Upton
EEO Services Analyst                              Date: May 21, 2024
NEEOISO
P. O. Box 21979
Tampa, FL 33622-1979

**Enclosure:** EEOC Appeal Form 573

cc:
Complainant
Princess Myers
521 Chalmette Street
Harvey, LA 70058-4427
**USPS Tracking No: 9114 9022 0078 9860 3003 13**

Representative
Caroline Gabriel
Most & Associates
201 St. Charles Avenue Suite 2500, #9685
New Orleans, LA 70170
**USPS Tracking No: 9114 9022 0078 9860 3003 20**

## NOTICE OF APPEAL/PETITION - COMPLAINANT
## TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
OFFICE OF FEDERAL OPERATIONS
P.O. Box 77960
Washington, DC 20013

**Complainant Information:** (Please Print or Type)

| | |
|---|---|
| Complainant's name (Last, First, M.I.): | |
| Home/mailing address: | |
| City, State, ZIP Code: | |
| Daytime Telephone # (with area code): | |
| E-mail address (if any): | |

**Attorney/Representative Information (if any):**

| | |
|---|---|
| Attorney name: | |
| Non-Attorney Representative name: | |
| Address: | |
| City, State, ZIP Code: | |
| Telephone number (if applicable): | |
| E-mail address (if any): | |

**General Information:**

| | |
|---|---|
| Name of the agency being charged with discrimination: | |
| Identify the Agency's complaint number: | |
| Location of the duty station or local facility in which the complaint arose: | |
| Has a **final action** been taken by the agency, an Arbitrator, FLRA, or MSPB on this complaint? | ____Yes;  Date Received _____(Remember to attach a copy)<br>____No<br>____This appeal alleges a breach of settlement agreement |
| Has a complaint been filed on this same matter with the EEOC, another agency, or through any other administrative or collective bargaining procedures? | ____No<br>____Yes (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate) |
| Has a civil action (lawsuit) been filed in connection with this complaint? | ____No<br>____Yes **(Attach a copy of the civil action filed)** |

**NOTICE:** Please **attach a copy of the final decision or order** from which you are appealing. If a hearing was requested, please attach a copy of the agency's final order and a copy of the EEOC Administrative Judge's decision. Any comments or brief in support of this appeal MUST be filed with the EEOC **and** with the agency **within 30 days** of the date this appeal is filed. The date the appeal is filed is the date on which it is postmarked, hand delivered, or faxed to the EEOC at the address above.

Please specify any reasonable accommodations you will require to participate in the appeal process:

| | |
|---|---|
| Signature of complainant or complainant's representative: | |
| Date: | |
| Method of Service on Agency: | |
| Date of Service: | |

EEOC Form 573 REV 2/09

# PRIVACY ACT STATEMENT

(This form is covered by the Privacy Act of 1974. Public Law 93-597. Authority for requesting the personal data and the use thereof are given below.)

1. **FORM NUMBER/TITLE/DATE**: EEOC Form 573, Notice of Appeal/Petition, February 2009
2. **AUTHORITY**: 42 U.S.C. § 2000e-16
3. **PRINCIPAL PURPOSE**: The purpose of this questionnaire is to solicit information to enable the Commission to properly and effectively adjudicate appeals filed by Federal employees, former Federal employees, and applicants for Federal employment.
4. **ROUTINE USES**: Information provided on this form may be disclosed to: (a) appropriate federal, state or local agencies when relevant to civil, criminal, or regulatory investigations or proceedings; (b) a Congressional office in response to an inquiry from that office at your request; and (c) a bar association or disciplinary board investigating complaints against attorneys representing parties before the Commission. Decisions of the Commission are final administrative decisions, and, as such, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in depersonalized form as a data base for statistical purposes.
5. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION**: Since your appeal is a voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

---

You may send your appeal to:

The Equal Employment Opportunity Commission
Office of Federal Operations
P.O. Box 77960
Washington, D.C. 20013

Fax it to (202) 663-7022 or submit it through the Commission's electronic submission portal.